UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHERINE HARRELL,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Hon. Paul L. Maloney

Case No. 1:07-CV-504

### REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 44 years of age at the time of the ALJ's decision.  (Tr. 24).  She possesses a General Equivalency Diploma (GED) and worked previously as a cashier, grocery store clerk, flocker, furniture assembler, and janitorial worker.  (Tr. 34, 141, 146, 155-61).

Plaintiff applied for benefits on November 14, 2003, alleging that she had been disabled since October 1, 2002, due to arthritis.  (Tr. 112-14, 140, 208-10).  Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 49-110, 211-31).  On December 14, 2005, Plaintiff appeared before ALJ James Prothro, with testimony being offered by Plaintiff and vocational expert, David Holwerda.  (Tr. 344-95).  In a written decision dated January 30, 2006, ALJ Janice Bruning determined that Plaintiff was not disabled.  (Tr. 33-42).

The Appeals Council remanded the matter for further consideration of Plaintiff's residual functional capacity and whether such rendered Plaintiff disabled.  (Tr. 47-48).  On September 28, 2006, Plaintiff appeared before ALJ William King, with testimony being offered by Plaintiff and vocational expert, Michelle Ross.  (Tr. 396-433).  In a written decision dated October 25, 2006, the ALJ determined that Plaintiff was not disabled.  (Tr. 18-26).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the

matter. (Tr. 5-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On August 2, 2002, Plaintiff was examined by Dr. James Wheat at the Allegan Medical Clinic. (Tr. 242-43). Plaintiff reported that she was experiencing neck and back pain. (Tr. 243). Plaintiff exhibited "somewhat limited" range of neck motion and "tenderness" through her cervical and thoracic spine. (Tr. 242). The doctor observed "no evidence of any neurologic deficit in [Plaintiff's] upper extremities. (Tr. 242). Dr. Wheat diagnosed Plaintiff with back pain secondary to muscle spasm. (Tr. 242).

On September 30, 2002, Plaintiff was examined by Dr. Robert Allen at the Allegan Medical Clinic. (Tr. 240-41). Plaintiff reported that she was experiencing headaches and neck pain. (Tr. 241). An examination of Plaintiff's cervical spine revealed tenderness and limited range of motion. (Tr. 241). Plaintiff exhibited 5/5 strength in her upper extremities. (Tr. 241). X-rays revealed that Plaintiff's cervical spine was "very arthritic." (Tr. 241). Plaintiff was prescribed medication and physical therapy. (Tr. 241). The doctor instructed Plaintiff that after a "couple of days" she could return to work. (Tr. 241).

On October 23, 2002, Plaintiff participated in an electromyography examination, the results of which revealed "minimal slowing of median sensory function across the left wrist," but "no electrical signs of cervical radiculopathy on either side." (Tr. 232-34).

On December 4, 2002, Plaintiff was examined by Dr. Allen. (Tr. 239). Plaintiff reported that her neck pain had not improved. (Tr. 239). Plaintiff exhibited 5/5 strength in her upper

extremities, but an examination of Plaintiff's cervical spine revealed "decreased" range of motion. (Tr. 239). The doctor recommended that Plaintiff undergo an MRI of her spine. (Tr. 239).

On December 9, 2002, Plaintiff participated in an MRI examination of her cervical spine, the results of which revealed "mild" spondylostenosis at C3-4 and "mild" right-sided foraminal narrowing at C3-4 and C4-5. (Tr. 263). There was no evidence of focal disc extrusion or nerve root compression. (Tr. 263).

On March 19, 2003, Plaintiff was examined by Dr. Joseph VandenBosch. (Tr. 269-71). Plaintiff reported that she was experiencing headaches and neck pain exacerbated by "prolonged physical activity." (Tr. 269). An examination of Plaintiff's cervical spine revealed "moderately restricted" range of motion and tenderness throughout. (Tr. 270). The doctor diagnosed Plaintiff with "cervical myofascial pain with cervicogenic headaches which appear to have an occipital neuralgia component." (Tr. 270). The doctor recommended that Plaintiff undergo a series of nerve block treatments. (Tr. 271).

On April 2, 2003, Plaintiff reported that she had experienced "significant sustained improvement" in her pain following nerve block treatment. (Tr. 268). On April 16, 2003, Plaintiff reported "significant improvement" in her headache and neck pain. (Tr. 267).

On May 8, 2003, Plaintiff was examined by Dr. Allen. (Tr. 275). Plaintiff reported that her symptoms increased and decreased depending on her activity level. (Tr. 275). An examination of Plaintiff's cervical spine revealed limited range of motion and "tension throughout." (Tr. 275). Plaintiff exhibited 5/5 strength in her lower extremities and was able to get "in and out of the supine position with minimal difficulty." (Tr. 275).

X-rays of Plaintiff's lumbosacral spine, taken on August 15, 2003, revealed that the vertebrae were "intact" and "in normal alignment." (Tr. 283). The disc spaces were "well maintained" and there was no evidence of bony abnormality. (Tr. 283). There was evidence of degenerative changes, but no evidence of spondylolysis or spondylolisthesis. (Tr. 283).

On November 19, 2003, Plaintiff was examined by Dr. Jennifer Houtman at the Allegan Medical Clinic. (Tr. 273). Plaintiff reported that she was experiencing bilateral foot pain. (Tr. 273). An examination of Plaintiff's feet revealed full range of motion with no evidence of swelling. (Tr. 273). The results of a December 24, 2003 examination revealed similar results. (Tr. 272).

On February 13, 2004, Plaintiff was examined by Dr. Houtman. (Tr. 311). Plaintiff reported that she was experiencing foot pain which radiated into her knees and back, making it difficult to walk. (Tr. 311). The doctor instructed Plaintiff that she need to resume physical therapy. (Tr. 311). X-rays of Plaintiff's feet, taken on April 9, 2004, revealed "some very subtle joint space narrowing," but otherwise there was no evidence of abnormality. (Tr. 306). On July 15, 2004, Dr. Houtman reported that Plaintiff was capable of working, so long as the job permitted her to sit and stand as needed. (Tr. 308).

On February 8, 2005, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed "mild" degenerative changes, but no evidence of spondylostenosis, focal disc extrusion, or nerve root compression. (Tr. 313).

On February 28, 2005, Dr. Houtman reported that Plaintiff was capable of working, subject to the following limitations: (1) no prolonged sitting or standing, and (2) no lifting more than

6

ten pounds. (Tr. 314). On March 15, 2005, Plaintiff reported that her back pain had improved with physical therapy. (Tr. 318).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) mild degenerative disc disease of the thoracic and lumbar spine, (2) moderate degenerative disc

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

7

disease of the cervical spine, (3) mild bilateral foot degenerative joint disease, and (4) mild bilateral hip degenerative joint disease. (Tr. 21). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 21). The ALJ concluded that while Plaintiff could no longer perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 21-25). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following restrictions: (1) she can occasionally lift/carry 10 pounds, (2) she can stand and/or walk for no more than two hours during an 8-hour workday, (3) she can sit for six hours (or more) during an 8-hour workday, (4) she can only occasionally use her upper extremities for pushing/pulling, (5) she can only occasionally use her lower extremities to operate pedals and controls, (6) she must be able to sit or stand at will, (7) she can only occasionally climb, bend, balance, stoop, kneel, crouch, or crawl, (8) she can only occasionally be exposed to vibration activities, (9) she can only occasionally reach overhead, and (10) she can frequently perform fingering or handling activities. (Tr. 21-22). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could no longer perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a

9

significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Michelle Ross.

The vocational expert testified that there existed approximately 13,500 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 428-31). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. The ALJ was not Required to Re-Contact Plaintiff's Care Providers

On February 28, 2005, Dr. Houtman reported that Plaintiff was capable of working, subject to the following limitations: (1) no prolonged sitting or standing, and (2) no lifting more than ten pounds. On August 22, 2006, Dr. Peter Savage completed a report regarding Plaintiff's ability to physically perform work activities. (Tr. 321-24). Dr. Savage reported that during an 8-hour workday, Plaintiff can sit and stand/walk for only 2.5 hours each. (Tr. 321). The doctor did not assess Plaintiff's ability to walk during an 8-hour workday. (Tr. 321). Dr. Savage reported that Plaintiff can only occasionally lift/carry five pounds and can never lift or carry as much as ten pounds. (Tr. 321). The doctor also reported that Plaintiff can never stoop, squat, kneel, climb, or reach above shoulder level (with either upper extremity). (Tr. 322).

Plaintiff testified at the administrative hearing that she did not recall ever being examined by Dr. Savage. (Tr. 400). Plaintiff indicated that as of the date Dr. Savage completed the aforementioned report, he was "covering for" Dr. Houtman who was on maternity leave. (Tr. 400).

Noting that Dr. Savage never examined Plaintiff, as well as the fact that the doctor's report contained inconsistencies, the ALJ discounted Dr. Savage's opinion. (Tr. 23).

Because of the circumstance with Dr. Savage and Dr. Houtman, the ALJ offered Plaintiff (who was represented by counsel) the opportunity to keep the record open so that she could obtain and submit any additional medical evidence from Plaintiff's care providers at the Allegan Clinic where Dr. Savage and Dr. Houtman worked. (Tr. 400-01). Plaintiff declined the offer. (Tr. 401). The ALJ nonetheless instructed Plaintiff that "if there's anything else that [the Allegan Clinic] provide you with, send it in and I'll certainly take a look at it." (Tr. 401). There is no indication that Plaintiff made any effort to submit any additional medical evidence to the ALJ following the administrative hearing.

Plaintiff now asserts that the ALJ fatally erred by failing to re-contact Dr. Savage and Dr. Houtman to "clarify" their opinions. In support of this position, Plaintiff relies on the following provision of the Code of Federal Regulations:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. *We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques*. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance

11

>   where medical evidence is obtained over the telephone, the telephone
>   report will be sent to the source for review, signature and return.

20 C.F.R. §§ 404.1512(e), 416.912(e) (emphasis added).

As detailed above, the record before the ALJ contained the results of numerous objective medical tests and examinations, treatment notes from Plaintiff's various care providers (including Dr. Houtman), as well as the two opinions noted above. This evidence was more than sufficient to conclude that Plaintiff was not disabled. As the provision cited above makes clear, the ALJ has no obligation to re-contact a medical source unless the record before him is "inadequate" to resolve the question of the claimant's disability. *See, e.g., DeBoard v. Commissioner of Social Security*, 211 Fed. Appx. 411, 416 (6th Cir., Dec. 15, 2006); *Cowan v. Astrue*, 2008 WL 2421708 at *4-5 (10th Cir., June 17, 2008); *Robinson v. Astrue*, 2008 WL 822235 at *1 n.3 (5th Cir., Mar. 25, 2008). Furthermore, "[a] disagreement between two medical professionals does not render the opinion of one 'inadequate' under the regulations." *DeBoard*, 211 Fed. Appx. at 416.

The Court also notes that there was no need for the ALJ to re-contact either Dr. Savage or Dr. Houtman because their opinions did not contain any conflict or ambiguity, did not lack necessary information, and did not appear to be based on medically unacceptable techniques. As Defendant correctly asserts, "[t]he rationale provided by Dr. Savage was poor, but it was not unclear."

To the extent that Plaintiff argues that she was unfairly disadvantaged by the fact that Dr. Houtman was on maternity leave and, therefore, unable to timely offer an opinion concerning Plaintiff's condition, the Court is not persuaded. As noted above, the initial decision in this matter (subsequently remanded) was issued on January 30, 2006, more than seven months before Dr.

Houtman apparently began maternity leave. The analysis in this initial decision clearly put Plaintiff on notice that Dr. Houtman's February 28, 2005 opinion failed to support her claim for benefits. (Tr. 38). Thus, to the extent that Plaintiff felt the need to "clarify" Dr. Houtman's opinion she had ample opportunity to do so before the doctor went on maternity leave.

The provision of the C.F.R. on which Plaintiff relies is intended to make sure that the Commissioner satisfies his duty of "inquiry and factual development" before resolving a claimant's disability application. *See, e.g., Maes v. Astrue*, 522 F.3d 1093, 1097-98 (10th Cir. 2008) (where record revealed that claimant had been prescribed anti-depressant medication, but there was no evidence that claimant had ever been diagnosed or treated for depression, ALJ had an obligation to re-contact medical sources to resolve this apparent conflict). Plaintiff has cited to no authority for the proposition that the ALJ is required to re-contact a medical source who proffers opinions which are not supported by the objective medical evidence or which fail to advance the claimant's application for benefits.

In sum, for the reasons articulated above, the Court concludes that the ALJ did not err by failing to re-contact Dr. Savage or Dr. Houtman concerning their opinions.

b. Plaintiff is not Entitled to Remand

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 329-34, 339-43). The Appeals Council received the evidence into the record and considered it before declining to review the ALJ's determination. (Tr. 5-8). This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit

indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This additional material consists of two items. The first item is a January 5, 2007 report completed by Dr. Houtman regarding Plaintiff's ability to physically perform work activities. (Tr. 329-32). The doctor reported that during an 8-hour workday, Plaintiff can sit and stand/walk for only 2.5 hours each. (Tr. 329). The doctor reported that Plaintiff can only occasionally lift/carry five pounds and can never lift or carry as much as ten pounds. (Tr. 329). The doctor also reported that Plaintiff can never stoop, squat, kneel, climb, or reach above shoulder level (with either upper extremity). (Tr. 330). The second item is a February 8, 2007 statement by Dr. Houtman, in which she reiterated her opinion that during an 8-hour workday, Plaintiff can sit and stand/walk for only 2.5 hours each. (Tr. 339-43). However, the doctor further stated that her opinion was not based on her examinations of Plaintiff conducted prior to the ALJ's decision in this matter, but was instead based on her December 2006 examination of Plaintiff. (Tr. 342).

Plaintiff has failed to articulate good cause for her failure to timely submit this evidence. Moreover, even if good cause did exist, it is not reasonable to assert that consideration of this material by the ALJ would have led to a different result. An examination of Dr. Houtman's January 5, 2007 report reveals that it is nothing more than a xerox of Dr. Savage's August 22, 2006 report, albeit signed instead by Dr. Houtman. The ALJ properly rejected this opinion when it was submitted by Dr. Savage. Repackaging the same opinion under the signature of a treating physician would not have changed the outcome in this matter, as this report is contradicted by the evidence of record. Furthermore, the opinions at issue concern Plaintiff's condition following the ALJ's decision in this matter and there is neither evidence nor allegation that these subsequent opinions reflect Plaintiff's condition prior to the ALJ's decision in this matter. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure

to file objections within the specified time waives the right to appeal the District Court's order. *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                           Respectfully submitted,

Date: July 25, 2008                                                /s/ Ellen S. Carmody
                                                                 ELLEN S. CARMODY
                                                                 United States Magistrate Judge